IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FREDERICK LEE RAY

    Petitioner,                   No. CIV S-08-0811 JAM DAD P

    vs.

MIKE KNOWLES,

    Respondent.                FINDINGS & RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges the decision of the California Board of Parole Hearings (hereinafter "Board") to deny him parole for three years at his ninth parole consideration hearing held on July 27, 2006.  Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

PROCEDURAL BACKGROUND

        Petitioner is confined pursuant to a judgment of conviction entered in the Orange County Superior Court in 1989.  (Pet. at 2.)  On May 19, 1989, petitioner pled guilty to second degree murder, in violation of Cal. Penal Code § 187.  (Id.)  Petitioner was subsequently sentenced to serve a term of fifteen years to life in state prison.  (Id.)

1

1   The parole consideration hearing which is placed at issue by the habeas petition
2   pending before this court was held on July 27, 2006.  (Answer, Ex. A at Ex. A (hereinafter
3   "transcript".)  On that date, a Board panel found petitioner not suitable for release from prison
4   and denied parole for three years.  (Id. at 51.)
5   Petitioner challenged the Board's decision in a petition for writ of habeas corpus
6   filed in the Orange County Superior Court on March 20, 2007.  (Answer, Ex. A.)  That petition
7   was denied in a reasoned decision dated May 29, 2007.  (Answer, Ex. B.)  Subsequently,
8   petitioner challenged the Board's decision in a petition for a writ of habeas corpus filed in the
9   California Court of Appeal for the Fourth Appellate District.  (Answer, Ex. C.)  That petition was
10  summarily denied by order dated July 19, 2007.  (Answer, Ex. D.)  On July 30, 2007, petitioner
11  filed a petition for review in the California Supreme Court.  (Answer, Ex. E.)  That petition was
12  summarily denied by order filed October 10, 2007.  (Answer, Ex. F.)

## FACTUAL BACKGROUND

The Board described the facts of petitioner's commitment offense at his July 27, 2006 parole suitability hearing as follows:

> On April 16, 1988, at approximately 9:56 a.m., officers from the Fullerton Police Department were dispatched to 1401 South Orange, #7 in Fullerton in response to a reported female body at the location.  Responding officers made contact with witness, Scott Ray, son of the Defendant who stated that he had gone to his father's apartment due to concerns about comments his father had made to him earlier that morning.  He wanted to check on his father and see if anything was wrong.  When he arrived at the apartment, there was no answer to his knock so he opened the front door with a key that he had in his possession.  Upon entering the apartment, he observed the victim's body laying in the hallway beneath a sheet.  Witness Ray contacted police.  Police observed that the victim had five apparent stab wounds and had been moved from the front room area to a hallway.  Also noted were pieces of duct tape found on the victim's chest wound.  Reportedly, the Defendant had fled the area.  On May 18, on a bus destined for Las Vegas, Nevada, the Defendant stopped in Barstow, California where he turned himself in to authorities.

(Transcript at 8-9.)

ANALYSIS

I. <u>Standards of Review Applicable to Habeas Corpus Claims</u>

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See <u>Peltier v. Wright</u>, 15 F.3d 860, 861 (9th Cir. 1993); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. See <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000); <u>Middleton</u>, 768 F.2d at 1085. Habeas corpus cannot be utilized to try state issues <u>de</u> <u>novo</u>. <u>Milton v. Wainwright</u>, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997); <u>Clark v. Murphy</u>, 331 F.3d 1062, 1067 (9th Cir. 2003). Title 28 U.S.C. § 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See also <u>Penry v. Johnson</u>, 532 U.S. 782, 792-93 (2001); <u>Williams v. Taylor</u>, 529 U.S. 362 (2000); <u>Lockhart v. Terhune</u>, 250 F.3d 1223, 1229 (9th Cir. 2001). If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. <u>Delgadillo v. Woodford</u>, 527 F.3d 919, 925 (9th Cir. 2008). See also <u>Frantz v. Hazey</u>, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that

we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo. Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

II. Petitioner's Claim

Petitioner argues that the Board's unfavorable suitability decision violated his right to due process because it was "without 'some evidence' that I am a current risk to public safety." (Pet. at 5.) Petitioner supports his claim with the following argument:

> During my 20 plus years I have no serious write ups (115s). I have 2 forensic (psyche) reports indicating I am an excellent candidate for parole, and pose no risk to public safety. I have earned my G.E.D., college credits towards an A.A. degree, ministry certificate from Patten Bible College, and have earned 3 trade skills.

(Id.)

1. State Court Decision

The Orange County Superior Court provided the last reasoned state court decision in response to petitioner's due process claim. That court concluded as follows:

4

Petitioner is currently serving an indeterminate term of 15 years to life in state prison with the possibility of parole following his 1989 guilty plea and conviction for the second degree murder of his girlfriend [Pen. Code, § 187].

The Board of Parole Hearings found petitioner unsuitable for parole following a July 27, 2006 subsequent parole consideration hearing.  The Board determined that:

    1.  The commitment offense was carried out for a very trivial motive in an especially cruel, dispassionate and calculated manner demonstrating an exceptionally callous disregard for human suffering.

    2.  Petitioner has a record of institutional misconduct.

## II.

Petitioner seeks to vacate the Board of Parole Hearings' determination and secure his immediate release on parole claiming:

    A.  The Board's decision is without reliable evidentiary support and lacks a rational nexus between those factors of unsuitability found by the Board and petitioner's current risk to public safety if released on parole.

    B.  The Board's continued reliance on the unchanging circumstances of his commitment offense to find petitioner unsuitable for parole while ignoring ample evidence supportive of parole violates his right to due process.

## III.

The petition does not establish a prima facie case for habeas corpus relief.  The Board's decision concerning petitioner's parole suitability is supported by some evidence in the record.  In reaching its determination, the Board reasonably relied upon the circumstances of the commitment offense. (Pen. Code, § 3041(b); Cal. Code of Regs., tit. 15, § 2402(b) and (c)(1)(B)(C)(D)(E).)

On April 16, 1998, police officers from the Fullerton Police Department were summoned to petitioner's apartment by his son.  Inside the apartment, police found the victim's dead body in a hallway beneath a sheet.  The victim had been fatally stabbed five times by the petitioner and moved from the front room to a hallway.  The victim's body had stab wounds to her chest, stomach, and thigh area as well as defensive wounds to her left hand.  Petitioner fled the crime scene but turned himself in approximately one month later while en route to Las Vegas.

/////

The victim was petitioner's girlfriend. The offense stemmed from a verbal dispute over $100. Petitioner claims to have been in a drunken stupor, remembers arguing with the victim about the money but does not remember assaulting the victim with a knife.

No patent abuse of discretion is evident in the Board's finding. An allegedly intoxicated petitioner violently attacked his unarmed girlfriend over $100, repeatedly stabbed her, and then left her to die without attempting to summon assistance for her. The Board's characterization of the offense as cruel, callous, and dispassionate is warranted by the level violence [sic] and cruelty exhibited by petitioner toward his victim.

Some evidence in the record also supports the Board's finding that petitioner has a record of institutional misconduct. Over the years, petitioner has been cited four times for violations of institutional rules relating to a failure to report to work, a failure to log out, and obstructing the view within a prison cell. The most recent citation was issued in 2005. While the misconduct in question does not involve violence, it is relevant to petitioner's ability to comply with the law and societal norms and justifies the Board's lingering concern over petitioner's ability to be safely released into the community on parole. (See, Cal. Code of Regs., tit. 15, § 2402(b).)

The Board recognized petitioner's positive accomplishments while in prison which include a discipline free record for violence, solid educational and vocational programming, a favorable psychological assessment, and realistic parole plans. The Board nevertheless found that the positive aspects of petitioner's prison record do not outweigh those circumstances pointing to unsuitability for release on parole at this time. Of particular concern to the Board is petitioner [sic] apparent lack of insight into his crime as reflected by his inability to remember his fatal assault on the victim. Such lack of recollection is inconsistent with his recollection of the $100 as the reason for the argument with the victim. Petitioner does not meet his burden of demonstrating arbitrary and capricious action on the part of the Board of Parole Hearings. Due consideration of petitioner's eligibility for parole was given and a proper evidentiary foundation exists for the Board's determination finding petitioner currently unsuitable for release on parole.

The Board has very broad discretion to identify and weigh the factors relevant to predicting by subjective analysis whether an inmate will be able to live in society without committing additional antisocial acts. (In re Fuentes (2005) 135 Cal. App.4th 152, 160.) In reviewing a parole suitability determination made by the Board of Parole Hearings, a court views the record in the light most favorable to that determination. (See, In re Morrall (2002) 102 Cal. App.4th 280, 301.)

6

Courts may review the factual basis of a decision of the Board denying parole in order to ensure that the decision complies with due process of law. However, courts may only inquire whether some evidence in the record before the Board supports the decision to deny parole, based upon the factors specified by statute and regulation. (In re Rosenkrantz (2002) 29 Cal.4th 616, 658.)

The precise manner in which the specified factors relevant to parole suitability are considered and balanced lies within the discretion of the Board of Parole Hearings, but the decision must reflect an individualized consideration of the specified criteria and cannot be arbitrary or capricious. It is irrelevant that a court might determine that the evidence in the record tending to establish suitability for parole far outweighs evidence demonstrating unsuitability for parole. As long as the decision reflects due consideration of the specified factors as applied to the individual prisoner in accordance with applicable legal standards, the court's review is limited to ascertaining whether there is some evidence in the record that supports the decision. (In re Rosenkrantz, supra, 29 Cal.4th at 677.)

Petitioner's remaining claim of error is likewise without merit. In evaluating an individual inmate's parole suitability, the Board of Parole Hearings is not precluded from relying on the unchanging circumstances of the commitment offense.

The panel or board shall set a release date unless it determines that the gravity of the current convicted offense or offenses, is such that consideration of the public safety requires a lengthier period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting. (Pen. Code, § 3041(b).) The Board of Parole Hearings "may protect public safety in each discrete case by considering the dangerous implications of a life-maximum prisoner's crime individually. While the Board must point to factors beyond the minimum elements of the crime for which the inmate was committed, it need engage in no further comparative analysis before concluding that the particular facts of the offense make it unsafe, at that time, to fix a date for the prisoner's release." (In re Dannenberg (2005) 34 Cal.4th 1061, 1071.)

IV.

No prima facie case for relief is established. An order to show cause will issue only if petitioner has established a prima facie case for relief on habeas corpus. (People v. Romero (1994) 8 Cal.4th 728, 737; In re Clark (1993) 5 Cal.4th 750, 769, fn. 9.)

The petition for writ of habeas corpus is DENIED.

(Answer, Ex. B.)

7

2. <u>Due Process in the California Parole Context</u>

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. One alleging a due process violation must first demonstrate that he was deprived of a liberty or property interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. <u>Ky. Dep't of Corr. v. Thompson</u>, 490 U.S. 454, 459-60 (1989); <u>McQuillion I</u>, 306 F.3d at 900.

A protected liberty interest may arise from either the Due Process Clause of the United States Constitution or state laws. <u>Bd. of Pardons v. Allen</u>, 482 U.S. 369, 373 (1987). The United States Constitution does not, of its own force, create a protected liberty interest in a parole date, even one that has been set. <u>Jago v. Van Curen</u>, 454 U.S. 14, 17-21 (1981). However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest." <u>McQuillion v. Duncan</u>, 306 F.3d 895, 900 (9th Cir. 2002) (<u>McQuillion I</u>) (quoting <u>Greenholtz v. Inmates of Neb. Penal</u>, 442 U.S. 1, 12 (1979)).

California's parole scheme gives rise to a cognizable liberty interest in release on parole, even for prisoners who have not already been granted a parole date. <u>Sass v. Cal. Bd. of Prison Terms</u>, 461 F.3d 1123, 1128 (9th Cir. 2006); <u>Biggs v. Terhune</u>, 334 F.3d 910, 914 (9th Cir. 2003); <u>McQuillion I</u>, 306 F.3d at 903; <u>see also</u> <u>In re Lawrence</u>, 44 Cal. 4th 1181, 1204, 1210, 1221 (2008). Accordingly, this court must examine whether California provided the constitutionally-required procedural safeguards when depriving petitioner of a protected liberty interest and, if not, whether the Orange County Superior Court's conclusion that it did was contrary to or an unreasonable application of clearly established federal law.

In this regard, it is clearly established federal law that a parole board's decision deprives a prisoner of due process with respect to his constitutionally protected liberty interest in a parole release date if the Board's decision is not supported by "some evidence in the record."

8

Superintendent v. Hill, 472 U.S. 445, 457 (1985); Irons v. Carey, 505 F.3d 846, 851 (9th Cir. 2007); Sass, 461 F.3d at 1128; Biggs, 334 F.3d at 915. "The 'some evidence' standard is minimally stringent," and a decision will be upheld under that standard if there is any evidence in the record that could support the conclusion reached by the factfinder. Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)). See also Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986). However, "the evidence underlying the board's decision must have some indicia of reliability." Jancsek v. Or. Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987). See also Perveler v. Estelle, 974 F.2d 1132, 1134 (9th Cir. 1992). Determining whether the "some evidence" standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence. Toussaint, 801 F.2d at 1105. The question is whether there is any reliable evidence in the record that could support the conclusion reached. Id.

When assessing whether a state parole board's suitability decision was supported by "some evidence," the analysis "is framed by the statutes and regulations governing parole suitability determinations in the relevant state." Irons, 505 F.3d at 851. Therefore, this court must:

> look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by "some evidence" in [petitioner's] case constituted an unreasonable application of the "some evidence" principle articulated in Hill.

(Id.)

Under California law, prisoners serving indeterminate prison sentences "may serve up to life in prison, but they become eligible for parole consideration after serving minimum terms of confinement." In re Dannenberg, 34 Cal. 4th 1061, 1078 (2005). The Board normally sets a parole release date one year prior to the inmate's minimum eligible parole release date, and does so "in a manner that will provide uniform terms for offenses of similar gravity and

magnitude in respect to their threat to the public." In re Lawrence, 44 Cal. 4th at 1202 (citing California Penal Code § 3041(a)).  A release date must be set "unless [the Board] determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration . . . and that a parole date, therefore, cannot be fixed . . . ." Cal. Penal Code § 3041(b).

In order to carry out the mandate of California Penal Code § 3041, the Board must determine "whether the inmate poses 'an unreasonable risk of danger to society if released from prison,' and thus whether he or she is suitable for parole." In re Lawrence, 44 Cal. 4th at 1202 (citing California Code Regs., tit. 15, § 2281(a)).  In doing so, the Board must consider all relevant, reliable information available regarding

> the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.

Cal. Code Regs., tit. 15, § 2281(b).

The regulations identify the circumstances that tend to show suitability or unsuitability for release. Cal. Code Regs., tit. 15, § 2281(c) & (d). The following circumstances have been identified as tending to show that a prisoner is suitable for release: (1) the prisoner has no juvenile record of assaulting others or committing crimes with a potential of personal harm to victims; (2) the prisoner has experienced reasonably stable relationships with others; (3) the prisoner has performed acts that tend to indicate the presence of remorse or has given indications that he understands the nature and magnitude of his offense; (4) the prisoner committed his crime as the result of significant stress in his life; (5) the prisoner's criminal behavior resulted from having been victimized by battered women syndrome; (6) the prisoner lacks a significant history

of violent crime; (7) the prisoner's present age reduces the probability of recidivism; (8) the prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release; and (9) institutional activities indicate an enhanced ability to function within the law upon release. Cal. Code Regs., tit. 15, § 2281(d).

The following circumstances have been identified as tending to indicate unsuitability for release: (1) the prisoner committed the offense in an especially heinous, atrocious, or cruel manner; (2) the prisoner had a previous record of violence; (3) the prisoner has an unstable social history; (4) the prisoner's crime was a sadistic sexual offense; (5) the prisoner had a lengthy history of severe mental problems related to the offense; and (6) the prisoner has engaged in serious misconduct in prison. Cal. Code Regs., tit. 15, § 2281(c). Factors to consider in deciding whether the prisoner's offense was committed in an especially heinous, atrocious, or cruel manner include: (A) multiple victims were attacked, injured, or killed in the same or separate incidents; (B) the offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; (C) the victim was abused, defiled or mutilated during or after the offense; (D) the offense was carried out in a manner that demonstrated an exceptionally callous disregard for human suffering; and (E) the motive for the crime is inexplicable or very trivial in relation to the offense. Id. § 2281(c)(1)(A) - (E).

The overriding concern in determining parole suitability in California is public safety. Dannenberg, 34 Cal. 4th at 1086. This "core determination of 'public safety' . . . involves an assessment of an inmates *current* dangerousness." Lawrence, 44 Cal. 4th at 1205 (emphasis in original). See also Cal. Code Regs. tit. 15, § 2281(a) ("Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.") Accordingly, under California law,

> when a court reviews a decision of the Board or the Governor, the relevant inquiry is whether some evidence supports the decision of the Board or the Governor that the inmate constitutes a current

threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings.

Lawrence, 44 Cal. 4th at 1212 (citing In re Rosenkrantz, 29 Cal. 4th 616, 658 (2002); Dannenberg, 34 Cal. 4th at 1071; and In re Lee, 143 Cal. App. 4th 1400, 1408 (2006)).

In recent years the Ninth Circuit Court of Appeals has concluded that, given the liberty interest that California prisoners have in release on parole, a continued reliance upon an unchanging factor to support a finding of unsuitability for parole may, over time, constitute a violation of due process. The court has addressed the issue in three significant cases, each of which will be discussed below.

First, in Biggs, the Ninth Circuit Court of Appeals recognized that a continued reliance on an unchanging factor to deny parole, such as the circumstances of the offense, could at some point result in a due process violation.[1] While the court in Biggs rejected several of the reasons given by the Board for finding the petitioner in that case unsuitable for parole, it upheld three: (1) petitioner's commitment offense involved the murder of a witness; (2) the murder was carried out in a manner exhibiting a callous disregard for the life and suffering of another; and (3) petitioner could benefit from therapy. Biggs, 334 F.3d at 913. However, the court in Biggs cautioned that continued reliance solely upon the gravity of the offense of conviction and petitioner's conduct prior to committing that offense in denying parole could, at some point, violate due process. In this regard, the court observed:

> As in the present instance, the parole board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements set forth by state law. Over time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of Biggs' offense and prior conduct would raise serious questions involving his liberty interest in parole.

---

[1] That holding has been acknowledged as representing the law of the circuit. Irons, 505 F.3d at 853; Sass, 461 F.3d at 1129.

Id. at 916. The court in Biggs also stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Biggs. 334 F.3d at 917.

In Sass, the Board found the petitioner unsuitable for parole at his third suitability hearing based on the gravity of his offenses of conviction in combination with his prior offenses. 461 F.3d at 1126. Citing Biggs, the petitioner in Sass contended that reliance on these unchanging factors violated due process. The court disagreed, concluding that these factors amounted to "some evidence" to support the Board's determination. Id. at 1129. The court provided the following explanation for its holding:

> While upholding an unsuitability determination based on these same factors, we previously acknowledged that "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and *could* result in a due process violation." Biggs, 334 F.3d at 917 (emphasis added). Under AEDPA it is not our function to speculate about how future parole hearings could proceed. Cf. id. The evidence of Sass' prior offenses and the gravity of his convicted offenses constitute some evidence to support the Board's decision. Consequently, the state court decisions upholding the denials were neither contrary to, nor did they involve an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d).

Id.

In Irons, the Ninth Circuit sought to harmonize the holdings in Biggs and Sass, stating as follows:

> Because the murder Sass committed was less callous and cruel than the one committed by Irons, and because Sass was likewise denied parole in spite of exemplary conduct in prison and evidence of rehabilitation, our decision in Sass precludes us from accepting Irons' due process argument or otherwise affirming the district court's grant of relief.
>
> We note that in all the cases in which we have held that a parole board's decision to deem a prisoner unsuitable for parole solely on

13

> the basis of his commitment offense comports with due process, the decision was made before the inmate had served the minimum number of years required by his sentence. Specifically, in <u>Biggs</u>, <u>Sass</u>, and here, the petitioners had not served the minimum number of years to which they had been sentenced at the time of the challenged parole denial by the Board. <u>Biggs</u>, 334 F.3d at 912; <u>Sass</u>, 461 F.3d at 1125. All we held in those cases and all we hold today, therefore, is that, given the particular circumstances of the offenses in these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms.
>
> Furthermore, we note that in <u>Sass</u> and in the case before us there was substantial evidence in the record demonstrating rehabilitation. In both cases, the California Board of Prison Terms appeared to give little or no weight to this evidence in reaching its conclusion that Sass and Irons presently constituted a danger to society and thus were unsuitable for parole. We hope that the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes. <u>Biggs</u>, 334 F.3d at 917.

<u>Irons</u>, 505 F.3d at 853-54.[2]

  3.  <u>Analysis</u>

In addressing the factors it considered in reaching its 2006 decision that petitioner was unsuitable for parole, the Board in this case stated as follows:

> PRESIDING COMMISSIONER PORTER: We're back on the record. Okay. The time is 12:15. In the matter of Mr. Frederick Ray, CDC Number E-18725. The Panel has review [sic] all the information received from the public and relied on the following circumstances in concluding that the prisoner is not suitable for parole and would pose and [sic] unreasonable risk of danger to society or a threat to public safety, if released from prison. The offense was carried out in an especially cruel and callous manner. I

---

[2] The California Supreme Court has also acknowledged that the aggravated nature of the commitment offense, over time, may fail to provide some evidence that the inmate remains a current threat to public safety. <u>In re Lawrence</u>, 44 Cal. 4th at 1218-20 & n. 20. Additionally, a recent panel of the Ninth Circuit in <u>Hayward v. Marshall</u>, 512 F.3d 536, 546-47 (9th Cir. 2008), determined that under the "unusual circumstances" of that case the unchanging factor of the gravity of the petitioner's commitment offense did not constitute "some evidence" supporting the governor's decision to reverse a parole grant on the basis that the petitioner would pose a continuing danger to society. However, on May 16, 2008, the Court of Appeals decided to rehear that case en banc. <u>Hayward v. Marshall</u>, 527 F.3d 797 (9th Cir. 2008). Therefore, the panel decision in <u>Hayward</u> is no longer citable precedent.

14

|   |   |
|---|---|
| 1 | mean this was a lady who you said you loved and you had her – a relationship with her for three or four years and she would come |
| 2 | visit you and spend the night with you and she didn't expect that the person she was spending the night with would end killing her. |
| 3 | The offense was carried out in a dispassionate and calculated manner such as execution style murder.  This lady was stabbed |
| 4 | several times.  One time wasn't good enough (inaudible) several times.  Not only the puncture wounds to her chest, but she also had |
| 5 | defensive wounds.  The investigating officer observed five apparent stab wounds to the victim's chest and stomach and one |
| 6 | stab wound to her thigh.  They also observed – were defensive wounds to the victim's left hand.  So this lady was actually trying |
| 7 | to fight off the attack and she was getting her hand cut in the process of you trying to stab her.  So the offense was carried out in |
| 8 | manner, [sic] which demonstrates an exceptionally callous disregard for human suffering.  There was great violence, |
| 9 | viciousness and high degree of cruelty.  And the motive for the crime was very trivial in relation to the offense.  A hundred dollars |
| 10 | was missing.  Surely, this lady's life was worth more than a $100.  And sir, I – I got problems with your lack of (inaudible) – you seem |
| 11 | to have a lack insight [sic] regarding it because you seem to remember that she had the $100, that you were fighting over the |
| 12 | $100.  You seem to remember when you woke up from your supposedly drunken stupor that one of the first things you did you |
| 13 | checked her purse and you found the $100 bill according to your statement.  And but you can't – and you remembered the |
| 14 | supposedly $100 bill that was stolen was in her purse but for some reason you can't remember the events around – surround the attack. |
| 15 | And so it makes me think, sir, that you're minimizing the crime and – because you just keep putting it on alcohol and you're not |
| 16 | really coming to grips with really [sic] happened that night.  You're talking around it.  Social history – sure that's the case.  Every [sic] |
| 17 | since you're [sic] been 18, you're [sic] felt like you have to drink to excess every day and that's what basically had a great deal to do |
| 18 | with this murder.  You've had a total of four 128As and the last one was in '05 for obstruction of view.  Your psychological report |
| 19 | dated 4/16/03, by Cohen – it seems to be supportive.  And nevertheless, you know, so you have done some good things. |
| 20 | You've only – you have absolutely no 115s since you've been in custody.  That's great.  You got your GED in 1991.  In '92 and '92, |
| 21 | [sic] you had college courses, which included philosophy and speech.  You got your vocation, that's excellent.  In '89, you had |
| 22 | paint and decorating and you got your certification in that.  You got your PIA, furniture refinishing.  You've work that [sic] since 1990 |
| 23 | to present, so that's a good skill.  You've also worked in the clothing room, dining room worker, sewing machine operator. |
| 24 | You worked as a porter.  You got some good self-help behind you and just some of it. [sic]  You had bible studies in the '90s and you |
| 25 | got certification with some of those classes from Patton College.  From – you've got plenty AA behind you.  In 2000, the Impact |
| 26 | Program.  In '99, Life Skills.  In 2003, Inmate Employability |

        Program.  In '92, the Laubach Tutor Program and in 2006, the Forgiveness Group.  So sir, you've certainly done some things that you should commended [sic] for.  However, these are [sic] positive aspects of your behavior does not out way [sic] the factors of unsuitability.  In a separate decision, the Hearing Panel finds that it is not reasonable to expect that parole would be granted at hearing [sic] during the following three years.  So this is a three-year denial and that's because the crime was very cruel.  The crime was done or planned without feeling bad about hurting others.  I mean even when you woke up and found that, okay; she's dead, even though you claim there was no blood around the body, in one of [sic] statements.  Once you figured that she was dead, you didn't make any attempt to try to get help for her.  Basically, you figured you're better just getting out of there instead of trying to do something to help somebody that love – somebody that you said you loved.  So basically, sir, you do not care if people suffer.  The reason for the crime was very small compared to the hurt it caused.  So sir, that's going to conclude the reading.

(Transcript at 47-50.)

        After taking into consideration the Ninth Circuit decisions in <u>Biggs</u>, <u>Sass</u>, and <u>Irons</u>, and for the reasons set forth below, this court concludes that petitioner is not entitled to federal habeas relief with respect to his due process challenge to the Board's July 27, 2006, decision denying him parole.  The court acknowledges that petitioner has made great strides in prison, both vocationally and educationally, and that his prison disciplinary record does not involve acts of violence.  In addition, petitioner informs the court that he was found suitable for parole in 2002, but that the state Governor reversed that decision.  (Traverse at 18.)  Although there are clearly circumstances in this case that tend to indicate petitioner is suitable for release, the Board's decision that petitioner was unsuitable for parole and that his release would unreasonably endanger public safety was still supported by "some evidence" that bore "indicia of reliability."  <u>Jancsek</u>, 833 F.2d at 1390.  Specifically, the Board relied on the circumstances of petitioner's offense of conviction along with his prison disciplinary convictions.  Both of these factors find support in the record before this court and, according to the cases cited above, constitute "some evidence" supporting the Board's decision that petitioner was not yet suitable for release on parole.  <u>Sass</u>, 469 F.3d at 1129; <u>Irons</u>, 505 F.3d at 665.  This case has not yet

reached the point, although it may well be approaching that point, where a continued reliance on an unchanging factor such as the circumstances of the offense in denying parole has resulted in a due process violation. Accordingly, petitioner is not entitled to relief on his claim that the Board's failure to find him suitable for parole at his April 19, 2006 parole suitability hearing violated his right to due process. Sass, 461 F.3d at 1129; Irons, 505 F.3d at 664-65.

III. Request for Evidentiary Hearing

Petitioner has requested that an evidentiary hearing be held by this court on his due process claim. (Traverse at 4-5.)

Pursuant to 28 U.S.C. § 2254(e)(2), an evidentiary hearing is appropriate under the following circumstances:

> (e)(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
>
> (A) the claim relies on-
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense[.]

Under this statutory scheme, a district court presented with a request for an evidentiary hearing must first determine whether a factual basis exists in the record to support a petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate." Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999). See also Earp v. Ornoski, 431 F.3d 1158, 1166 (9th Cir. 2005); Insyxiengmay v. Morgan, 403 F.3d 657, 669-70 (9th Cir. 2005). A petitioner requesting an evidentiary hearing must also demonstrate that he has presented a "colorable claim for relief." Earp, 431 F.3d at 1167 (citing Insyxiengmay, 403 F.3d at 670, Stankewitz v.

17

Woodford, 365 F.3d 706, 708 (9th Cir. 2004) and Phillips v. Woodford, 267 F.3d 966, 973 (9th Cir. 2001)).  To show that a claim is "colorable," a petitioner is "required to allege specific facts which, if true, would entitle him to relief."  Ortiz v. Stewart, 149 F.3d 923, 934 (9th Cir. 1998) (internal quotation marks and citation omitted).

The court concludes that no additional factual supplementation is necessary in order to reach the merits of petitioner's due process claim and that an evidentiary hearing is therefore not appropriate in this case.  The facts alleged by petitioner in support of his claims, even if established at a hearing, would not entitle him to federal habeas relief.  Therefore, petitioner's request for an evidentiary hearing should be denied.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus and his request for an evidentiary hearing be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 23, 2010.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8:
ray811.hc